IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JASON ORKIN                                          :
                                                     :
        PLAINTIFF,                                   :
                                                     :
-against-                                            :        Civil Action No.:
                                                     :
PHILADELPHIA POLICE DEPARTMENT,                      :
THE CITY OF PHILADELPHIA,                            :
PHILADELPHIA POLICE DEPARTMENT                       :
EMPLOYEE ASSISTANCE PROGRAM UNIT,                    :
HAROLD TOOMER *Individually*, WILLIAM                :
SCHUBERT *individually*, CAPTAIN                     :
BRADSHAW, *Individually*                             :
                                                     :
        DEFENDANTS.                                  :

## CIVIL ACTION--COMPLAINT

PLAINTIFF, JASON ORKIN, respectfully allege the following claims, as for their

complaint against the above captioned Defendants, upon information and belief as follows:

## NATURE OF THE CASE

Plaintiff complains pursuant to Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq

(1964); the Pennsylvania Whistleblower Law Violation of Section 1423 for Retaliation and

Hostile Work Environment; Disability Discrimination under the American with Disabilities Act

of 1990, 42 U.S.C. § 12101 *et. seq* ("ADA") and the Pennsylvania Human Rights Act, PA 1955

Act 222 *et. seq* ("PHRA") (perceived and actual); Disability Discrimination Retaliation under the

American with Disabilities Act of 1990, 42 U.S.C. § 12101 *et. seq* ("ADA")and the

Pennsylvania Human Rights Act, PA 1955 Act 222 *et. seq* ("PHRA"); Violation of Pennsylvania

Common Law, Intentional Infliction of Emotional Distress; Violation of Pennsylvania Common

Law Violation, Defamation; and Violation of Pennsylvania Common Law, Invasion of Privacy—False Light, Restatement (Second) of Torts § 625 E.

## JURISDICTION AND VENUE

1.      Jurisdiction of this action is conferred upon this Court as this action involves a Federal question under Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq (1964), Title 42 USC, Chapter 21, Subchapter 1 Section 1983, and Title 42 USC, Chapter 126, the American Disabilities Act ("ADA").

2.  The Court also has supplemental jurisdiction over the state causes of action.

3.  Plaintiff is a citizen of the Commonwealth of Pennsylvania residing within venue of this Eastern District of Pennsylvania District Court.

4.  Defendant Philadelphia Police Department is in Philadelphia County, Pennsylvania and is law enforcement department for the County of Philadelphia, Pennsylvania.

5.  Defendant City of Philadelphia at all relevant times is the governmental agency which oversees the administration of the Philadelphia Police Department.

6.  Defendant Philadelphia Police Department Employee Assistance Program Unit is a unit within the Philadelphia Police Department overseeing the internal requests for mental health assistance for any employee or family member of an employee of the Philadelphia Police Department.

7.  At all relevant times, defendant Harold Toomer was employed as a Sergeant with the Philadelphia Police Department.

8.  At all relevant times, defendant William Schubert was employed as a Corporal with the Philadelphia Police Department.

9.   At all relevant times, defendant Captain Bradshaw was employed as a Captain with the Philadelphia Police Department.

10.   Venue is proper in this district since Plaintiff was employed by Defendants within the Eastern District of Pennsylvania.

11.   The matter in controversy exceeds $75,000.

## PARTIES

12.   Plaintiff, JASON ORKIN (hereinafter also referred to as Plaintiff and "ORKIN") is a male who resides in the county of Philadelphia, Pennsylvania. At all relevant times ORKIN was employed as a police officer with the Philadelphia Police Department.

13.   Defendant, Philadelphia Police Department (hereinafter referred to as "PPD"), whose principal offices are located at 750 Race Street, Philadelphia, Pennsylvania 19106, is the governmental law enforcement agency for the county of Philadelphia, Pennsylvania, located in the Commonwealth of Pennsylvania.

14.   Defendant Philadelphia Police Department Employee Assistance Program Unit is a unit within the Philadelphia Police Department overseeing the internal requests for mental health assistance for any employee or family member of an employee of the Philadelphia Police Department.

15.   Defendant, City of Philadelphia has principal governmental offices located at the City Solicitor's Office at 1515 Arch Street, 17th Floor, Philadelphia, Pennsylvania 19102, and is a governmental agency in the Commonwealth of Pennsylvania.

16.   Defendant, Harold Toomer, (hereinafter referred to as "TOOMER") is an individual male, employed as a Sergeant in the Philadelphia Police Department, and at all times,

TOOMER was the PLAINTIFF'S direct supervisor. Sergeant Harold Toomer's badge number is 500.

17. Defendant, William Schubert, (hereinafter referred to as "SCHUBERT") is an individual male, employed as a Corporal in the Philadelphia Police Department, and at all times material, SCHUBERT was the PLAINTIFF'S direct supervisor. Corporal William Schubert's badge number is 8190.

18. Defendant, Captain Bradshaw (hereinafter referred to as "BRADSHAW") is an individual male employed as a Corporal in the Philadelphia Police Department, and at all times material, BRADSHAW was the PLAINTIFF'S direct supervisor. Captain Bradshaw's badge number is 38.

## PROCEDURAL HISTORY

19. Plaintiff, by and through his attorney, simultaneously filed a charge against the Defendants with the Equal Employment Opportunity Commission, the Pennsylvania Commission on Human Rights, the Philadelphia Commission on Human Rights, and any other relevant state and local agency.

20. On August 24, 2021, Plaintiff, by and through his attorney, filed supplemental Charges with the same agencies.

21. On or about, October 29, 2017, the EEOC issued Plaintiff a Right to Sue Letter. See, Exhibit 1, EEOC Right to Sue Letter.

22. This action is commenced within 90 days of receipt of the EEOC Right to Sue Letter.

## STATEMENT OF FACTS

23. Plaintiff was employed with the PPD in May of 2021 and remains employed there.

24. The PPD is the police department for the City of Philadelphia.

25. The EAP is a unit under the umbrella of the PPD and a resource for PPD employees and their dependents seeking counseling or services.

26. On or about May of 2021, Plaintiff learned that his son was a victim of sexual assault.

27. On May 4, 2021, Plaintiff sought the advice of his superior, Sergeant Harold TOOMER.

28. Plaintiff confided in TOOMER about the sexual assault his son was a victim of and said that he was having mental health trouble.

29. TOOMER suggested that Plaintiff seek help from the EAP.

30. Plaintiff asked TOOMER to keep this conversation confidential. TOOMER confirmed that he would keep the conversation confidential.

31. Per PPD Directive 6.14- 3(b)(2) "[a]ny employee may be referred to EAP by their supervisor after the employee has informed the supervisor of their concerns and requests the assistance of EAP (i.e. experiencing stress resulting from personal concerns or experiencing grief after the loss of a loved one or coworker.) **The supervisor will hold that conversation with the employee in strict confidence**."

32. On May 4, 2021, Plaintiff did seek help from the EAP. On that date both he and a counselor for the EAP signed a Philadelphia Police Department Employee Assistance Program Unit (EAP) Statement of Understanding (herein after referred to as the Statement of Understanding).

33. The Statement of Understanding states that "[i]nformation concerning the use of the EAP, will not be given to anyone outside of the EAP, except as required by law. An employee's participation in the EAP will not be discussed or released without the employee's written consent."

34. The Statement of Understanding also states that "[n]o employee's job security or promotional opportunities shall be jeopardized before of his or her participation in the EAP." This is also included in PPD Directive 6.14- 2(F).

**<u>Plaintiff's privacy was violated in violation of PPD Directives</u>**

35. On or about May 24, 2021, Plaintiff was working when Corporal William SCHUBERT approached Plaintiff for a conversation.

36. SCHUBERT asked Plaintiff to go outside and that is where the conversation took place. SCHUBERT told Plaintiff that TOOMER had informed him about Plaintiff's son's sexual assault.

37. SCHUBERT stated that TOOMER told him because at that time Plaintiff was classified as "T" in the system and SCHUBERT was in charge of training.

38. On or about May 24, 2021, TOOMER asked to have a conversation outside with Plaintiff, which they did. TOOMER informed Plaintiff that he had told SCHUBERT and BRADSHAW about the sexual assault of Plaintiff's son.

39. In the same conversation, TOOMER informed Plaintiff that multiple officers had approached TOOMER asking about Plaintiff going to EAP.

40. Those officers also said negative comments about Plaintiff's mental health to TOOMER.

41. Per PPD Directive 8.7-1(B), "[a]ppropriate disciplinary action will be taken, up to and including dismissal, against any employee, supervisor, or administrator who engages in such prohibited conduct (referring to discrimination/harassment). Disciplinary action will also be taken against any supervisor or administrator who allows such conduct to occur without taking appropriate action."

42. To the best of Plaintiff's knowledge there have been no disciplinary actions against the officers who made negative comments against Plaintiff and his mental health.

**<u>Fellow officers began treating Plaintiff differently once they heard<br>that Plaintiff sought treatment.</u>**

43. On or about the week of May 24, 2021, Plaintiff asked a fellow officer, Officer Stanley Randall, badge number 2403 (hereinafter referred to as RANDALL), if there were any rumors being spread about Plaintiff.

44. Randall confirmed the existence of rumors and stated that "word is going around that you had a mental breakdown."

45. Since learning of these rumors, Plaintiff has noticed that fellow officers who used to speak to Plaintiff at work, no longer speak to him.

46. The only people who knew about Plaintiff going to EAP were TOOMER and the EAP unit and the counselor who spoke with Plaintiff.

47. Both TOOMER and EAP/the counselor agreed that their conversations would be confidential.

48. EAP/the counselor even signed the Statement of Understanding which stated that the conversation would be confidential and even Plaintiff going to them would be confidential.

49. TOOMER admitted that he then told SCHUBERT and BRADSHAW, both who are in supervisory positions.

50. The information regarding his son's sexual abuse and his need of EAP services that were reported to SCHUBERT and the EAP was leaked to fellow officers without Plaintiff's consent.

51. The dissemination of Plaintiff's information by the defendants is an invasion of privacy, and in direct violation of PPD's own policies.

52. PPD Directive 6.14-1(E) states that [a]ll services provided by EAP…are strictly confidential."

53. PPD Directive 8.7-1(A) states that the PPD "maintains an employer/employee working environment free of discrimination and/or harassment, including that of discrimination/harassment which is based on … physical or mental disability (or a perception of such disabilities)…"

54. Per PPD Directive 8.7-3(B)(2), an example of prohibited conduct is "[d]erisive, demeaning, or belittling remarks, jokes, stories, or comments about a person's … disability (or a perception of such disabilities) … made in the presence of any employee."

55. Per PPD Directive 8.7-5(A), "[s]upervisors have a legal responsibility to ensure that their areas of supervision are free from employment discrimination, harassment and retaliation and [a] to safeguard their subordinates from such prohibited conduct."

56. Per PPD Directive 8.7-5(B), "[s]upervisors are not only accountable for themselves with respect to this Directive, but also for the prohibited conduct of their subordinates, other supervisors … where they know, or SHOULD HAVE KNOWN, prohibited conduct was occurring."

57. On or about July 7, 2021, Plaintiff dual filed a charge with the EEOC and PHRC, complaining about the disclosure of his son's sexual assault and his request for EAP intervention against the named defendants.

**Plaintiff faced retaliation after filing an EEOC and PHRC charge**

58. On or about August 1, 2021, after the original Charges were filed, Plaintiff was working at the Center City District.

59. On or about that same day, by information or belief, the named defendants were aware of Plaintiff's EEOC and PHRC filings.

60. Plaintiff commented to other officers that there should be an operable window in the front of the district where officers encounter and speak with civilians.

61. Plaintiff stated that he believed this was a safety concern since an officer required to speak with a civilian about a complaint or issue would need to leave the locked office space and enter an open space in the front of the district.

62. On or about August 1, 2021, Plaintiff sent an email to Fraternal Order of Police officials: John McNesby, Al Kuchler, and Roosevelt Poplar conveying the same safety concerns.

63. Plaintiff noted that a few weeks prior to August 1, 2021, he was in the open vestibule area when a disturbance occurred between two parties.

64. This put Plaintiff in danger, especially because he was unarmed due to his status as a limited duty officer.

65. Plaintiff is on limited or restrictive duty because of a workplace injury that occurred on July 13, 2019. His primary diagnosis is lumbar radiculopathy.

66. On or about August 2, 2021, John McNesby responded to Plaintiff that he had received a response from the city and if it was not replaced within two weeks, then he would call a private company to take care of the window. See, Exhibit 2, Email of John McNesby.

**Plaintiff faced PA Whistleblower Retaliation for making a complaint to McNesby after he was ignored by BRADSHAW.**

67. On August 2, 2021, Plaintiff reported for duty at Center City District and was asked to step outside with Corporal Bynum. Corporal Bynum stated that BRADSHAW did not want Plaintiff in the operations room for the rest of the week and was instead ordered to sit in the basement of the building.

68. There were no other officers seated in this part of the basement.

69. Plaintiff was given no tasks to complete.

70. Before Plaintiff was told to sit in the basement, he had been working in the operations room with two other officers who were on restricted duty, Officers Ray and DeLeon. Those officers were still working in the operations room as assistants when Plaintiff was relegated to the basement.

71. After sitting in the basement for some time, on August 2, 2021, Sergeant Hawe, Plaintiff's supervisor, summoned Plaintiff into his office which was also in the basement.

72. Sergeant Hawe told Plaintiff that BRADSHAW told him that Plaintiff had made a complaint about the front window of the district to Fraternal Order of Police President John McNesby the day before.

73. Sergeant Hawe stated that he voiced his concerns to BRADSHAW about having Plaintiff sit in the basement for a week alone.

74. BRADSHAW then reconsidered and allowed Plaintiff to return to the operations room.

75. BRADSHAW also ordered Plaintiff to return to EAP.

76. On or about August 6, 2021, Plaintiff's work restrictions were continued by his treating physician.

77. On or about August 9, 2021, Plaintiff was then transferred to the 22nd Police District.

78. The transfer order came from BRADSHAW.

79. Plaintiff was given three days' notice of this transfer in violation of PPD Policy where officers who are transferred must be given thirty days' notice.

80. Additionally, BRADSHAW ordered the transfer of five officers (including Plaintiff), all who were disabled or on limited duty, to other districts.

81. The transfer of all these officers occurred about a week after Plaintiff spoke up about his safety concerns.

82. Plaintiff believes that he and the other limited duty officers were transferred in an effort to hide BRADSHAW'S targeted retaliation against Plaintiff.

83. By information or belief, BRADSHAW has a history of using transfers as punishments for officers.

84. The transfers occurred about a week after Plaintiff spoke up about his safety concerns and in violation of police procedures.

85. On or about August 10, 2021, Plaintiff was assigned to work the front window in the operations room at the 22nd Police District.

86. During Plaintiff's shifts on both August 10, 2021 and August 11, 2021, Plaintiff was required to be on his feet constantly.

87. By information or belief,

88. Plaintiff is on limited duty and is restricted from standing for more than one to three hours during a shift. His doctor has limited his shifts to six hours each.

89. On both August 10, 2021 and August 11, 2021, Plaintiff was in extreme pain but continued to work his shifts despite the restrictions from his doctor.

90. At this point, Plaintiff feared additional retaliation should he voice any concerns about his safety and wellbeing.

91. On or about August 12, 2021, Plaintiff contacted his doctor to inform them of his pain. The doctor stated that they would reach out to the safety office about the restrictions.

92. Plaintiff's treating physician has prescribed Lyrica for the pain, however, because of side effects, he cannot take the medication while on duty.

WHEREFORE, Plaintiff asserts that the Defendants engaged in unlawful violations of Plaintiffs' rights both under state and federal laws, so much so as to merit compensatory damages, emotional damages, damages for physical harm, attorney's fees, punitive damages or any other legal or equitable relief as the court deems appropriate.

## AS A FIRST CAUSE OF ACTION
## FOR RETALITAION AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF PENNSYLVANIA'S WHISTLEBLOWER ACT
### Against All defendants

Section 1423 of Pennsylvania's Whistleblower Law provides:
"No employer may… retaliate…against an employee…because the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing… Pa. Stat.Ann. tit. 43, Section 1423(a); (b).

93. Plaintiff, incorporates herein, by reference thereto, the preceding paragraphs, as though the same were set forth herein at length.

94. Plaintiff acted in "good faith" reporting unsafe conditions in the workplace. Plaintiff's concerns were ignored, so he made the complaint to his Union Representative and others, which elicited a response.

95. BRADSHAW did not respond kindly after these safety concerns were made to other people.

96. BRADSHAW reassigned Plaintiff to the basement in retaliation for his complaint to FOP President John McNesby.

97. BRADSHAW ordered Plaintiff to the basement to keep him away from other officers, to exacerbate Plaintiff's mental health concerns and to force him to request a transfer.

98. At the same time, two other offers who were also on restrictive duty were still assigned to the operations area.

99. BRADSHAW's retaliation against Plaintiff was punitive in nature and designed to create an abusive work environment.

100. A week after Plaintiff voiced his safety concerns, he and the other four officers who were also on restrictive duty were reassigned to other districts within the PPD.

101. Plaintiff was reassigned to the 22nd District.

102. At the 22nd District, he was assigned to work shifts that required him to be on his feet for prolonged periods of time, in violation of his limited duty requirements.

103. The defendants' acts served no legitimate purpose, were retaliation and punitive against the Plaintiff.

104. Acting under "color of law" TOOMER, SCHUBERT, BRADSHAW, City of Philadelphia and PPDs' failure to act, purposeful conduct, punitive conduct was the direct and proximate cause of the injuries suffered by Plaintiff for reporting the unsafe working conditions.

105.   At all relevant times, TOOMER, SCHUBERT, and BRADSHAW were members violated the PPD Directives, including refraining from using their supervisory positions for retaliation against Plaintiff.

106.   PPD and City of Philadelphia failed in their supervisory capacity to TOOMER, SCHUBERT, and BRADSHAW to ensure this type of behavior did not happen or ensure that it was handled swiftly and appropriately.

107.   TOOMER, SCHUBERT, BRADSHAW, City of Philadelphia, and PPDs' actions and omissions "shock(s) the conscience," the acts were malicious, reckless, callous, retaliatory and deliberately indifferent against Plaintiff for reporting unsafe conditions at work.

108.   TOOMER, SCHUBERT, BRADSHAW, City of Philadelphia, and PPD jointly and severally conspired, aided and abetted to deprive and retaliate against Plaintiff for asserting his rights.

WHEREFORE, Plaintiff asserts that TOOMER, SCHUBERT, BRADSHAW, City of Philadelphia, and PPD engaged in unlawful violations against them, as to merit compensatory damages, emotional damages, damages for physical harm, attorney's fees, punitive damages or any other legal or equitable relief as the court deems appropriate.

**AS A SECOND CAUSE OF ACTION**
**VIOLATION OF THE PHRA FOR DISABILITY DISCRIMINATION AND RETALIATION**
**PERCEIVED AND ACTUAL**
**Against all defendants**

PHRA- PA 1955 Act 222, PHRA, Section 5 Subsection a provides:
(a)  For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor,

or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

109.   Plaintiff, incorporates herein, by reference thereto, the preceding paragraphs, as though the same were set forth herein at length.

110.   Plaintiff's mental health disability related to his struggle with his son's sexual assault was disseminated by PPD defendants. TOOMER, SCHUBERT, BRADSHAW, and EAP shared the information regarding Plaintiff's son's assault.

111.   Plaintiff was treated negatively by members of the PPD and the defendants because of a perceived disability.

112.   Once fellow officers learned that Plaintiff went to EAP for mental health services, he was ostracized and ignored by fellow PPD Officers.

113.   Once Plaintiff had made a safety complaint, he was treated differently by BRADSHAW and ordered to seek additional treatment with EAP.

114.   BRADSHAW used Plaintiff's perceived disability as a way to sanction him.

115.   TOOMER, SCHUBERT, BRADSHAW, EAP, City of Philadelphia, and PPD were aware that fellow officers were treating Plaintiff negatively because of his treatment with EA.

116.   Therefore, BRADSHAW sent Plaintiff to EAP as punishment knowing that it would only cause Plaintiff's workplace atmosphere to be increasingly hostile.

117.   Plaintiff also has an actual physical disability which requires him to be on limited or restrictive duty.

118.   Plaintiff was injured at work in 2019, which limited the number of hours allowed per shift and how long he can stand for a prolonged period of time.

119.   At the time Plaintiff first saw EAP, he was assigned to the operations room at the Center City District.

120.   After Plaintiff made a complaint regarding safety concerns at the Center City District, he was relegated to the basement to work alone, however, he was given no tasks.

121.   This reassignment came at the direction of BRADSHAW.

122.   Within a week of Plaintiff's complaint, he was transferred to the 22nd District where he was required to stand for long periods of time causing him pain.

123.   Plaintiff's assignment at the 22nd District did not follow his restrictive duty requirements.

124.   Plaintiff feared further discrimination, therefore he did not report this to a supervisor.

WHEREFORE, Plaintiff asserts that Defendants engaged in unlawful violations against them, as to merit compensatory damages, emotional damages, damages for physical harm, attorney's fees, or any other legal or equitable relief as the court deems appropriate.

## AS A THIRD CAUSE OF ACTION
## VIOLATION OF THE ADA FOR DISABILITY DISCRIMINATION, AND RETALIATION
## Against all defendants

ADA- Title 42 USC, Chapter 126, Section 12102.2, Subsection 1 provides:
The term "disability" means, with respect to an individual
(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment (as described in paragraph (3)).
…
(3) Regarded as having such an impairment
For purposes of paragraph (1)(C):

(A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

ADA- Title 42 USC, Chapter 126, Section 12112.2, Subsection a provides:
No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.
(b) Construction
As used in subsection (a) of this section, the term "discriminate against a qualified individual on the basis of disability" includes
(1) limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee.

125.   Plaintiff, incorporates herein, by reference thereto, the preceding paragraphs, as though the same were set forth herein at length.

126.   Plaintiff also has an actual physical disability which requires him to be on limited or restrictive duty.

127.   Plaintiff was injured at work in 2019, which limited the number of hours allowed per shift and how long he can stand for a prolonged period of time.

128.   At the time Plaintiff first saw EAP, he was assigned to the operations room at the Center City District.

129.   After Plaintiff made a complaint regarding safety concerns at the Center City District, he was relegated to the basement to work alone, however, he was given no tasks.

130.   This reassignment came at the direction of the defendants who knew that Plaintiff would suffer additional pain because of the transfer.

131.   Within a week of Plaintiff's complaint, he was transferred to the 22nd District where he was required to stand for long periods of time causing him pain.

132.   Plaintiff's assignment at the 22nd District did not follow his restrictive duty requirements.

133.   Plaintiff feared further discrimination, therefore he did not report this to a supervisor.

WHEREFORE, Plaintiff asserts that Defendants engaged in unlawful violations against them, as to merit compensatory damages, emotional damages, damages for physical harm, attorney's fees, punitive damages or any other legal or equitable relief as the court deems appropriate.

### AS A FOURTH CAUSE OF ACTION
### VIOLATION OF THE PHRA FOR DISABILITY DISCRIMINATION
### RETALIATION AND HOSTILE WORK ENVIRONMENT
### Against all defendants

PA 1955 Act 222, PHRA, Section 5 Subsection d provides:
For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.

134.   Plaintiff, incorporates herein, by reference thereto, the preceding paragraphs, as though the same were set forth herein at length.

135.   After Plaintiff made a complaint with superiors for safety concerns, he was retaliated against by TOOMER, SCHUBERT, BRADSHAW, City of Philadelphia, and PPD.

136.   BRADSHAW relegated Plaintiff to the basement to work alone, but without any tasks to complete.

137.   Two other officers on restrictive duty were still assigned to the operations area.

138.   Sergeant Hawe voiced his concerns about a one-week reassignment to the basement and BRADSHAW changed his mind, reassigning Plaintiff to the operations area.

139.   A one-week reassignment in the basement alone without any tasks to complete was obvious retaliation so that Plaintiff knew that BRADSHAW was unhappy with him.

140.   Fellow officers knew about the safety complaints and the timely reassignment; BRADSHAW used this retaliation against Plaintiff to make it known to the rest of the district how situations like this would be handled.

141.   Once BRADSHAW reassigned Plaintiff to the operations area, he ordered Plaintiff to seek additional treatment with EAP.

142.   BRADSHAW again pointedly used his retaliation against Plaintiff to make Plaintiff feel even more isolated by using his perceived disability against him.

143.   Within a week of the safety complaint, Plaintiff and the four fellow officers who were also on restrictive duty were transferred out of the Center City District.

144.   Plaintiff was transferred to the 22nd District where he was assigned to the operations area, where he needed to stand for long periods of time that did not conform to his restrictive duty limitations.

145.   Plaintiff feared that the retaliation and isolation that he felt would only get worse, so he did not report this to a supervisor.

146.   PPD and City of Philadelphia failed in their supervisory capacity to TOOMER, SCHUBERT, and BRADSHAW to ensure this type of behavior did not happen or ensure that it was handled swiftly and appropriately.

WHEREFORE, Plaintiff asserts that TOOMER, SCHUBERT, BRADSHAW, City of Philadelphia, and PPD engaged in unlawful violations against them, as to merit compensatory damages, emotional damages, damages for physical harm, attorney's fees, or any other legal or equitable relief as the court deems appropriate.

## AS A FIFTH CAUSE OF ACTION
## VIOLATION OF THE ADA DISABILITY DISCRIMINATION, RETALIATION AND HOSTILE WORK ENVIRONMENT
### Against all defendants

ADA- Title 42 USC, Chapter 126, Section 12203 provides:
(a) Retaliation
No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
(b) Interference, coercion, or intimidation
It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

147.   Plaintiff, incorporates herein, by reference thereto, the preceding paragraphs, as though the same were set forth herein at length.

148.   After Plaintiff made a complaint with superiors for safety concerns, he was retaliated against by TOOMER, SCHUBERT, BRADSHAW, City of Philadelphia, and PPD.

149.   BRADSHAW relegated Plaintiff to the basement to work alone, but without any tasks to complete.

150.   Two other officers on restrictive duty were still assigned to the operations area.

151.   Sergeant Hawe voiced his concerns about a one-week reassignment to the basement and BRADSHAW changed his mind, reassigning Plaintiff to the operations area.

152.   A one-week reassignment in the basement alone without any tasks to complete was obvious retaliation so that Plaintiff knew that BRADSHAW was unhappy with him.

153.   Fellow officers knew about the safety complaints and the timely reassignment; BRADSHAW used this retaliation against Plaintiff to make it known to the rest of the district how situations like this would be handled.

154.   Once BRADSHAW reassigned Plaintiff to the operations area, he ordered Plaintiff to seek additional treatment with EAP.

155.   BRADSHAW again pointedly used his retaliation against Plaintiff to make Plaintiff feel even more isolated by using his perceived disability against him.

156.   Within a week of the safety complaint, Plaintiff and the four fellow officers who were also on restrictive duty were transferred out of the Center City District.

157.   Plaintiff was transferred to the 22nd District where he was assigned to the operations area, where he needed to stand for long periods of time that did not conform to his restrictive duty limitations.

158.   Plaintiff feared that the retaliation and isolation that he felt would only get worse, so he did not report this to a supervisor.

159.   PPD and City of Philadelphia failed in their supervisory capacity to TOOMER, SCHUBERT, and BRADSHAW to ensure this type of behavior did not happen or ensure that it was handled swiftly and appropriately.

WHEREFORE, Plaintiff asserts that TOOMER, SCHUBERT, BRADSHAW, City of Philadelphia, and PPD engaged in unlawful violations against them, as to merit compensatory damages, emotional damages, damages for physical harm, attorney's fees, punitive damages or any other legal or equitable relief as the court deems appropriate.

### AS A SIXTH CAUSE OF ACTION
### FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Against all Defendants

Restatement (Second) of Torts Section 46:

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm results from it, for such bodily harm. The standard for judging the existence of intent for infliction of emotional distress is whether the actor desires to inflict severe emotional distress and also where he knows that such distress is certain, or substantially certain, to result from his conduct. It applies also where he acts recklessly, in deliberate disregard of a high degree of probability that the emotional distress will follow. The Defendants conduct "…is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community. See, Restatement (Second) of Torts, Section 46, cmt. j (1965).

160. Plaintiff, incorporates herein, by reference thereto, the preceding paragraphs, as though the same were set forth herein at length.

161. TOOMER, SCHUBERT, BRADSHAW, and EAP shared Plaintiff's personal information with fellow officers.

162. This was in violation of their own PPD Directives and was a proximate cause of Plaintiff's emotional distress.

163. Plaintiff became the subject of rumors questioning his mental health. Plaintiff's son was also the subject of conversation and the abuse that he suffered.

164. TOOMER, SCHUBERT, and BRADSHAW had a duty to keep Plaintiff's participation with EAP confidential; however, they violated that duty.

165. EAP had a duty to keep Plaintiff's participation in their treatment program confidential; however, they violated that duty.

166. TOOMER and SCHUBERT had a duty to report BRADSHAW for his treatment and retaliation against Plaintiff for filing charges with the EEOC and the Commonwealth of Pennsylvania and for reporting unsafe working conditions.

167. Defendants' breach of duty was the result of purposeful conduct.

168. Defendants' breach of duty was a direct and proximate cause of the physical and emotional injuries suffered by Plaintiff.

169. Defendants' breach of duty irrevocably tarnished Plaintiff's reputation within the PPD.

170. Defendants' breach of duty caused Plaintiff to feel isolated among fellow officers who believed Plaintiff had a mental breakdown.

171. Defendants jointly and severally conspired, aided and abetted to deprive and retaliate against Plaintiff for asserting his rights.

172. At all relevant times, the Defendants were acting under color of law and within the course of their official duties.

173. As the result of Defendants' actions, Plaintiff suffered injuries, including but not limited to emotional pain and suffering, sleep deprivation, emotional distress, and other continuing injuries the direct result of the Defendants' conduct Plaintiffs continue to suffer traumatic emotional effects the result of the Defendants' acts.

174. Plaintiff continues to suffer traumatic emotional effects as the result of the Defendants' intentional acts.

175. PPD and City of Philadelphia failed in their supervisory capacity to TOOMER, SCHUBERT, BRADSHAW, and EAP to ensure this type of behavior did not happen or ensure that it was handled swiftly and appropriately.

WHEREFORE, the Plaintiff asserts that the Defendants engaged in unlawful violations against them, as to merit compensatory damages, emotional damages, damages for physical harm, attorney's fees, punitive damages or any other legal or equitable relief as the court deems appropriate.

### AS A SEVENTH CAUSE OF ACTION
### DEFAMATION
### Against all Defendants

42 Pa. CS § 8343 subsection a provides:
In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:
(1) The defamatory character of the communication.
(2) Its publication by the defendant.
(3) Its application to the plaintiff.
(4) The understanding by the recipient of its defamatory meaning.
(5) The understanding by the recipient of it as intended to be applied to the plaintiff.
(6) Special harm resulting to the plaintiff from its publication.
(7) Abuse of a conditionally privileged occasion.

176. Plaintiff, incorporates herein, by reference thereto, the preceding paragraphs, as though the same were set forth herein at length.

177. Since TOOMER, SCHUBERT, and BRADSHAW were Plaintiff's supervisors, they are required to document any complaints by Plaintiff or about Plaintiff in Plaintiff's work records.

178. TOOMER, SCHUBERT, BRADSHAW, and PPD have access to Plaintiff's work records and can add reports when they see fit.

179. TOOMER, SCHUBERT, BRADSHAW, and PPD note reassignments to Plaintiff's work records and the reasons for the reassignments.

180.   TOOMER, SCHUBERT, BRADSHAW, and PPD added notes and reports to Plaintiff's work records regarding Plaintiff's safety complaints, his reassignment to the basement, and BRADSHAW ordering Plaintiff to seek additional treatment at EAP.

181.   Should Plaintiff seek a promotion or wish to receive a merit-based raise, these records may stand in his way to receiving them.

182.   TOOMER, SCHUBERT, BRADSHAW, and PPD included notes regarding Plaintiff's perceived disability in his work records, including information regarding the sexual assault to his son.

183.   These notes were written so that any future supervisor would be aware that Plaintiff made complaints to superiors even after BRADSHAW ignored them.

184.   BRADSHAW's notes are intended to warn future supervisors or superiors that Plaintiff is trouble and would not be a good candidate for a raise or promotion; due to a perceived disability or because he made the safety complaint.

185.   Plaintiff's reputation is irrevocably tarnished within the PPD.

186.   Plaintiff's reputation is irrevocably tarnished as of police officer should he seek employment outside of the PPD and City of Philadelphia.

187.   PPD and City of Philadelphia failed in their supervisory capacity to TOOMER, SCHUBERT, BRADSHAW, and EAP to ensure this type of behavior did not happen or ensure that it was handled swiftly and appropriately.

WHEREFORE, Plaintiff asserts that Defendants engaged in unlawful violations against them, as to merit compensatory damages, emotional damages, damages for physical harm, attorney's fees, punitive damages or any other legal or equitable relief as the court deems appropriate.

## AS AN EIGHT CAUSE OF ACTION
## INVASION OF PRIVACY—FALSE LIGHT
### Against all Defendants

The elements of false light invasion of privacy are as follows:
One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.
Publicity "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."
To be highly offensive to a reasonable person, "a major misrepresentation of a person's character, history, activities or beliefs is made that could reasonably be expected to cause a reasonable man to take serious offense."
Restatement (Second) of Torts § 625 E.

188.   Plaintiff, incorporates herein, by reference thereto, the preceding paragraphs, as though the same were set forth herein at length.

189.   Plaintiff is a police officer with the PPD.

190.   Plaintiff has enjoyed a reputation of being honest, hardworking, and effective in the law enforcement community.

191.   TOOMER, SCHUBERT, BRADSHAW, and EAP spread information about Plaintiff's son being sexually assaulted.

192.   TOOMER, SCHUBERT, BRADSHAW, and EAP spread information about Plaintiff's mental health to fellow officers within the PPD.

193.   TOOMER admitted to telling SCHUBERT and BRADSHAW about Plaintiff seeking help from EAP.

194.   After SCHUBERT and BRADSHAW became aware of Plaintiff's participation in treatment with EAP, fellow officers learned of this information and made Plaintiff aware of this.

195.   TOOMER told Plaintiff that fellow officers had asked TOOMER about Plaintiff's mental health and that he went to EAP.

196.   TOOMER told Plaintiff that fellow officers were making negative comments about Plaintiff's mental health.

197.   After this, Plaintiff noticed that fellow officers were treating him differently in a negative way.

198.   TOOMER, SCHUBERT, BRADSHAW, and EAP shared Plaintiff's confidential information regarding Plaintiff's treatment.

199.   TOOMER, SCHUBERT, BRADSHAW, and EAP knew that this would negatively affect Plaintiff's reputation with his fellow officers, and defendants still shared the information.

200.   TOOMER, SCHUBERT, BRADSHAW, and EAP did nothing to fix the damage that they caused to Plaintiff's reputation.

201.   TOOMER, SCHUBERT, BRADSHAW, EAP, City of Philadelphia, and PPD allowed the public and/or fellow officers to spread negative comments about Plaintiff's mental health, to view Plaintiff's reputation in a false light and to invade Plaintiff's privacy.

202.   Plaintiff alleges that TOOMER, SCHUBERT, BRADSHAW, and EAP's statements have been made public and have been communicated to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.

203.   These statements have cast a mischaracterization of Plaintiff's mental health and his reputation competence, credibility, professional and personal character.

204.   TOOMER, SCHUBERT, BRADSHAW, and EAP's statements are highly offensive to a reasonable person, "a major misrepresentation" of the Plaintiff's reputation, character, competence, personal history, activities, or beliefs which are reasonably justified to be expected to cause Plaintiff to take serious offense.

205.   TOOMER, SCHUBERT, BRADSHAW, and EAP's misfeasance or malfeasance, purposeful conduct, negligent conduct was a direct and proximate cause of the injuries suffered by Plaintiff.

206.   Defendants jointly and severally conspired, aided and abetted to deprive against the Plaintiffs.

207.   The Defendants are not entitled to qualified immunity for their actions and omissions.

208.   At all relevant times, the Defendants were acting under color of law and within the course of their official duties.

209.   PPD and City of Philadelphia failed in their supervisory capacity to TOOMER, SCHUBERT, BRADSHAW, and EAP to ensure this type of behavior did not happen or ensure that it was handled swiftly and appropriately.

WHEREFORE, the Plaintiff asserts that the Defendants engaged in unlawful violations against him, as to merit compensatory damages, damages for physical harm, emotional damages, economic damages, attorney's fees, punitive damages or any other legal or equitable relief as the court deems appropriate.

## JURY DEMAND

Plaintiff requests a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and economic damages, punitive damages, liquidated damages, compensatory damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

By: /s/ Andres Jalon, Esquire

Andres Jalon, Esq.
JALON & ASSOCIATES
17 W. Airy Street
Norristown, Pennsylvania 19401
ajalon@jalonesq.com

Dated: February 6, 2022