**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JASON ORKIN,**<br><br>                                            Plaintiff,<br><br>**v.**<br><br>**PHILADELPHIA POLICE DEPARTMENT, CITY OF PHILADELPHIA, PHILADELPHIA POLICE DEPARTMENT EMPLOYEE ASSISTANCE PROGRAM UNIT, HAROLD TOOMER**, individually, **WILLIAM SCHUBERT**, individually, **CAPTAIN BRADSHAW**, individually,<br>                                            Defendants. | **CIVIL ACTION**<br><br>**NO. 22-511** |

<u>**MEMORANDUM RE: DEFENDANTS' MOTION TO DISMISS**</u>

Baylson, J.                                                                            February 13, 2023

**I.      SUMMARY OF CLAIMS**

Plaintiff Jason Orkin brings a number of claims against the Philadelphia Police Department, the City of Philadelphia ("the City"), the Philadelphia Police Department Employee Assistance Program Unit ("the EAP"); and Harold Toomer, William Schubert, and Captain Bradshaw, individually ("the Named Defendants").  Am. Compl.

**A.      Summary of Facts**

**1.      <u>Mental Health Discrimination</u>**

The facts alleged in the Amended Complaint are as follows.  Orkin is employed as a police officer with the Philadelphia Police Department.  <u>Id.</u> at ¶ 12.  He has been on limited or restricted duty since 2019 after a workplace injury.  <u>Id.</u> at ¶ 61, n.1.  Orkin began suffering from mental health trouble in or around May 2021 after learning that his son had been sexually assaulted.  <u>Id.</u> at ¶¶ 27-29.  At the advice of Defendant Toomer, Orkin sought help from the EAP.  <u>Id.</u> at ¶¶ 30-33.

Orkin asked Toomer to keep the conversation about his mental health confidential.  Id. at ¶ 31.  However, on May 24, 2021, Orkin was approached by Defendant Schubert, who told Orkin that Toomer had informed Schubert about Orkin's situation; Toomer confirmed that he had told Schubert and Defendant Bradshaw.  Id. at ¶¶ 37-38, 40.  Toomer also told Orkin that "multiple officers" had approached Toomer about Orkin's use of the EAP.  Id. at ¶ 40.  Orkin became aware of rumors about him, including a rumor that he had had a "mental breakdown."  Id. at ¶¶ 43-44.  Orkin alleges that other officers began avoiding him and acting differently around him.  Id. at ¶ 45.  In July 2021, Orkin filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").  Id. at ¶ 56.

      2.   Whistleblower Retaliation

In August 2021, Orkin raised safety concerns stemming from a broken window that resulted in officers having to leave a secure operations room and enter a public space in order to interact with civilians.  Id. at ¶¶ 59-61.  Orkin made comments to "other officers" and also reported the issue to officials of the Fraternal Order of Police on August 1, 2021; those officials then forwarded Orkin's report to the City of Philadelphia's Department of Public Property.  Id. at ¶¶ 60, 62; Am. Compl. Ex. 3.

On August 2, 2021, Orkin was informed that Defendant Bradshaw did not want Orkin working in the operations room for the rest of the week; Orkin was instead assigned to sit in the basement and given no work to do.  Am. Compl. ¶¶ 63-64.  Later that day, Orkin's supervisor informed Orkin that the supervisor had raised concerns about Orkin's assignment to the basement; Bradshaw reconsidered and allowed Orkin to return to the operations room.  Id. at ¶¶ 66-70.  On August 9, 2021, Orkin was given three days' notice that he was being transferred to a different police district with four other officers, all disabled.  Id. at ¶¶ 72-74.

Orkin alleges that the transfer was in retaliation for his whistleblower report about the window.  Id. at ¶¶ 75-76.  He alleges that his assignment to the basement was intended to exacerbate his mental health issues.  Id. at ¶¶ 122-23.

### 3. Physical Disability Discrimination

At the new district, Orkin was required to be on his feet constantly, despite having a doctor's note stating that he should not stand for more than one to three hours per six-hour shift. Id. at ¶¶ 79-80.  Orkin alleges that he is in constant pain and cannot take his prescribed pain medication while on duty because of the side effects.  Id. at ¶¶ 81, 84.  Orkin alleges that he is afraid to complain out of fear of additional retaliation.  Id. at ¶ 82.

Orkin brings eight claims:

(1) Retaliation and hostile work environment in violation of the Pennsylvania Whistleblower Act against Bradshaw, the EAP, the City, and the Philadelphia Police Department (id. at ¶¶ 85-100);

(2) Violation of the Pennsylvania Human Rights Act ("the PHRA") on the basis of discrimination and retaliation against all Defendants (id. at ¶¶ 101-117);

(3) Violation of the Americans with Disabilities Act ("the ADA") on the basis of disability discrimination and retaliation against all Defendants (id. at ¶¶ 118-26);

(4) Violation of the PHRA on the basis of disability discrimination, retaliation, and hostile work environment against Bradshaw, the EAP, the City, and the Philadelphia Police Department (id. at ¶¶ 127-40);

(5) Violation of the ADA on the basis of disability discrimination, retaliation, and hostile work environment against Bradshaw, the EAP, the City, and the Philadelphia Police Department (id. at ¶¶ 141-53);

(6) Intentional infliction of emotional distress against all Defendants (id. at 154-69);

(7) Defamation against all Defendants (id. at 170-82); and

(8) Invasion of Privacy – False Light against all Defendants (id. at 183-204).

Orkin requests a jury trial on all triable issues, as well as damages and fees and costs.  Id. at 26-27.

### B.    Procedural History

Orkin filed a charge of discrimination against the Defendants with the Equal Employment Opportunity Commission ("EEOC"), the Pennsylvania Human Relations Commission ("PHRC"), and the Philadelphia Commission on Human Relations ("PCHR").  Am. Compl. ¶ 19.  He elected to dual charge via both the EEOC and the PHRC.  Id. at ¶ 21.  On January 31, 2022, he received a Notice of Right to Sue from the EEOC and filed his Original Complaint on February 9, 2022, within the requisite time.  Id. at ¶¶ 22-23.  On August 9, 2022, Orkin filed an Amended Complaint, including the Notice of Right to Sue and PHRC Dual File Charge Order, but not including the original Charges of Discrimination.  Am. Compl. Exs. A and B.

## II.    SUMMARY OF BRIEFING

### A.    The City's Motion to Dismiss

The City, on behalf of all Defendants, moves to dismiss the Amended Complaint arguing that each of Orkin's eight claims fails.  It argues that the Philadelphia Police Department and the Philadelphia Police Department Employee Assistance Program Unit are operating departments of the City and are therefore not amenable to suit.  Mot. at 9.  The City argues that Count I, alleging violation of Pennsylvania's whistleblower law, fails because Orkin has failed to show that the alleged wrongdoing rose to the level of "waste" required by the statute but was instead a "technical or minimal nature."  Id. at 11-13.  It also argues that Orkin's complaint regarding the window was made for Orkin's personal benefit as well as the Defendants' benefit and so was not made "in good

faith" as required by the statute.  Id. at 11-12, 14.  The City argues that Orkin has not alleged a connection between the communication about the window and his transfer.  Id. at 13-14.  The City also argues that the Whistleblower claim is time-barred because the alleged retaliation occurred on August 11, 2021 and Orkin failed to file his Original Complaint within 180 days, instead filing two days after the deadline.  Id. at 10-11.

The City argues that Counts II, III, IV, and V (alleging violations of the ADA and violations of the PHRA) fail because Orkin has not alleged protected activity under the ADA or the PHRA. Mot. at 3-4.  It also argues that Orkin's ADA and PHRA claims are not ripe because he did not include the Charges of Discrimination that he filed with the EEOC or PHRC.  Id. at 14-17.  The City argues that Orkin has failed to allege that there was a "tangible or adverse employment action" or that the discrimination was sever enough to create a hostile work environment.  Id. at 18, 19-20.  The City argues that Orkin has also failed to allege discrimination, retaliation, or hostile work environment based on physical disability because he cannot show an adverse action.  Id. at 21-22.

The City argues that it should be dismissed from Counts VI, VII, and VIII (intentional infliction of emotional distress, defamation, and false light invasion of privacy) because the City is immune from tort liability.  Id. at 4.  The City argues that Orkin has failed to plead that the Named Defendants engaged in "extreme and outrageous conduct" or that he had suffered "serious and permanent injuries."  Id. at 25-26.  The City argues that Orkin has failed to plead publication (id. at 27-28) or that the statements were defamatory or caused special harm (id. at 28-29).

### B.    Orkin's Response

Orkin concedes that the Philadelphia Police Department and the EAP should be dismissed because they are operating departments of the City.  Resp. at 9.  He also concedes that the City is immune from liability on the individual tort claims found in Counts VI, VII, and VIII.  Id. at 19.

Orkin argues that his Whistleblower Law claim is not time-barred because the continuing violations doctrine applies.  Id. at 10.  Orkin argues that the instances of discrimination were not "discrete acts" of discrimination for which an action could be brought individually, but instead were "continuing violations" because his assignment to the 22nd Police District is an ongoing assignment that extended beyond August 12, 2021, thereby occurring within the statute of limitations.  Id. at 11-12.[1]  He also argues that he properly pleaded a claim under the Pennsylvania Whistleblower Law because the issue he raised was a safety concern and sent to the appropriate authority.  Id. at 12-14.

Addressing Counts II, III, IV, and V, Orkin notes that the Charge Order and the Notice of Right to Sue were attached to his Amended Complaint, and so he had shown proof that his claims under the ADA and PHRA were ripe.  Id. at 15-17.  Orkin argues that he has established a claim of discrimination based on mental health because his allegations that he was the target of gossip, exacerbating his known mental health issues, should satisfy the pleading requirement for both discrimination and hostile work environment.  Id. at 17-18.  He does not address the arguments against his claim of discrimination due to physical disability.  Orkin also argues that the exacerbation of his mental health impairment satisfies the pleading requirement for his intentional infliction of emotional distress claim.  Id. at 19.  Finally, Orkin argues he has alleged publication as required for both his defamation and false light – invasion of privacy claims.  Id. at 19-20.

The City did not file a reply.

---

[1] Orkin also argues that the Complaint was filed only two days after the statute of limitations expired, and so any violation of the statute of limitations should be considered *de minimis* and should not prejudice him.  This argument fails: Pennsylvania courts have been very clear that a 180-day statute of limitations "is mandatory and courts have no discretion to extend it."  O'Rourke v. Pennsylvania Dept. of Corrections, 730 A.2d 1039, 1042 (Pa. 1999).

## III.    STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff.  Doe v. Univ. of the Scis., 961 F.3d 203, 208 (3d Cir. 2020).  To survive this motion, a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing Twombly, 550 U.S. at 555).  While a court must assume for purposes of a motion to dismiss that the plaintiff can prove the facts alleged in the complaint, "it is not . . . proper to assume that [she] can prove faces that [she] has not alleged[.]"  Twombly, 550 U.S. at 563 n.8 (citing Associated Gen. Contractors of Cal. Inc. v. Carpenters, 459 U.S. 519, 526 (1983).

## IV.    ANALYSIS

Orkin concedes that the Philadelphia Police Department and the Philadelphia Police Department Employee Assistance Program Unit should be dismissed from the case because they are operating departments of the City.  The Court shall therefore **GRANT** as unopposed the motion to dismiss as to those two defendants.

### A.    Count I: Claim of Violation of the Pennsylvania Whistleblower Law

The City challenges Orkin's first Count on two grounds: expiration of the statute of limitations and failure to state a claim.

#### 1.    Statute of Limitations

The City argues that the alleged retaliation occurred on August 11, 2021, over 180 days before Orkin's Complaint was filed on February 9, 2022.  Orkin argues that the continuing

violations doctrine should apply because he was retaliated against by being assigned to a different district, where he remains to date.

The Pennsylvania Whistleblower law requires a plaintiff to bring an action "within 180 days after the occurrence of the alleged violation." 43 Pa. Cons. Stat. § 1424(a). This is typically a mandatory limit which courts have no discretion to extend. O'Rourke v. Pennsylvania Dept. of Corrections, 730 A.2d 1039, 1040 (Pa. 1999). However, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Cowell v. Palmer Tp., 263 F.3d286, 292 (3d Cir. 2001) (internal citations omitted). In applying the continuing violations doctrine, courts consider at least three factors: (1) subject matter, (2) frequency, and (3) degree of permanence – degree of permanence is "the most important of the factors." Id.

Here, Orkin has alleged that he reported an unsafe working environment to his supervisor on or around August 1, 2021. Compl. ¶¶ 60-61. He alleges that his employer retaliated against him, first by assigning him to a basement room instead of the operations room with no work assignments, and then by reassigning him to a different District where he remains assigned to date. Id. at ¶¶ 63-73. This kind of retaliation (assuming it is retaliation) is ongoing, has continued be in effect as of the filing of the Complaint, and appears to be permanent. It therefore satisfies the "most important" factor when determining a continuing violation. As a result, the statute of limitations had not expired at the time Orkin filed his Original Complaint.

    2. Failure to Allege Adequate Facts

The Pennsylvania Whistleblower Statute states:

> No employer may discharge, threaten or otherwise discriminate or retaliate against
> an employee . . . because the employee . . . makes a good faith report or is about to

8

report, verbally or in writing, to the employer or appropriate authority an instance
of wrongdoing or waste.

43 Pa. Cons. Stat. § 1423(a).  A "good faith report" excludes reports made with "malice or

consideration of personal benefit."  Id. at § 1422.  A "wrongdoing" is a "violation which is not of

a merely technical or minimal nature of a Federal or State statute or regulation, of a political

subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest

of the public or the employer."  Id.  "Waste" is defined as "substantial abuse, misuse, destruction,

or loss of funds or resources."  An "appropriate authority" includes a "local government body,

agency or organization having jurisdiction over criminal law enforcement, regulatory violations,

professional conduct or ethics, or waste" or "a member, officer, agent, representative, or

supervisory employee of the body agency or organization."  Id.

The City argues that Orkin has failed to show that the alleged wrongdoing that Orkin

reported rose to the level of "waste" required by the statute but was instead a "technical or minimal

nature."  Mot. at 11-13.  It also argues that Orkin's complaint was not made "in good faith" as

required by the statute because it was primarily made to complain about unfair treatment.  Id.

at 11-12, 14.  It argues that Orkin did not report the alleged wrongdoing to the proper authority.

Id. at 13.  Finally, the City argues that Orkin has not alleged a causal connection between the

communication about the window and the transfer to the 22nd District.  Id. at 13-14.  Orkin

responds that he properly pleaded a claim under the Pennsylvania Whistleblower Law because the

issue he raised was a safety concern and sent to the appropriate authority.  Response at 12-14.

Orkin alleges that he reported the unsafe window to three officials of the Fraternal Order

of Police, who then forwarded the issue to the City's Department of Public Property.  Am. Compl.

¶¶ 60, 62; Am. Compl. Ex. 3.  However, Orkin does not allege what relationship the Fraternal

Order of Police has with the City, or the Philadelphia Police Department specifically.  He does not

allege that the officers of the Fraternal Order of Police were also "member[s], officer[s], agent[s], representative[s], or supervisory employee[s] of" the City or the Philadelphia Police Department. 43 Pa. Cons. Stat. § 1422.  Orkin has also not provided any support for the implied argument that if a whistleblower sends a report to someone who is not an appropriate authority, who then forwards the report to the appropriate authority, then the whistleblower has satisfied the "appropriate authority" element of a claim.  While Orkin alleges that he "commented to other officers" about his concerns with the windows (Am. Compl. ¶ 59), he does not allege who those other officers were or what their roles in the Philadelphia Police Department were.  As such, he has not adequately alleged that he sent his report to the appropriate authority.

Furthermore, a "wrongdoing" is a "violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." 43 Pa. Cons. Stat. § 1423.  While it may have been in the City or the public's best interest to have a functioning window separating the police department's operation room from public spaces, Orkin has not pointed to any statute, regulation, ordinance, code of conduct, or code of ethics which has been allegedly violated.  The Amended Complaint also does not allege that the broken window in question rose to the level of "substantial abuse, misuse, or destruction or loss of funds" as required by the statute.  Id.  Orkin has therefore failed to adequately plead wrongdoing or waste.

Because Orkin has failed to adequately allege that the officials he reported the issue to were the "appropriate authority," and because he has not shown wrongdoing or waste as defined by the statute, Count I shall be **DISMISSED** without prejudice and with leave to amend.

**B.      Counts II, III, IV, and V – Failure to Show Exhaustion**

The City argues that the ADA and PHRA claims are not ripe because Orkin did not include the Charges of Discrimination that he filed with the EEOC or PCHR.  Mot. at 14-17.  The City notes that both the ADA and the PHRA require a complainant to file an administrative charge with the appropriate commission before filing for judicial remedy.  Id. at 14-16, citing Barzanty v. Verizon PA, Inc., 361 Fed. Appx. 411, 413 (3d Cir. 2010).  The City argues that Orkin has not actually provided a copy of the Charges filed with the EEOC or PCHR, and so he cannot show that the claims raised in his Amended Complaint are the same claims brought in his Charge for Discrimination.  Mot. at 14-16.  As a result, the City argues that Orkin has not shown that he has exhausted the administrative remedies for the specific claims brought in the Amended Complaint. Id.  Orkin argues that his EEOC Notice to Sue Letter and his PHRC Charge Option, both filed with his Amended Complaint, should satisfy the requirement.  Resp. at 15-17.

Orkin alleges that he "filed a charge with the EEOC and PHRC, complaining about the disclosure of his son's sexual assault and his request for EAP intervention" against the Individual Defendants.  Am. Compl. ¶ 56.  He alleges that he filed supplemental charges with the EEOC and PHRC on August 24, 2021 (after the alleged retaliation and transfer).  Id. at ¶ 20.  However, he does not provide any detail about which claims were included in the various charges.  Neither the Charge Option from the PHRC nor the Notice of Right to Sue from the EEOC includes any details regarding the claims that were raised through the administrative process.  See Am. Compl. Ex. A (July 7, 2021 Charge Option), Am. Compl. Ex. B (January 31, 2022 Notice of Right to Sue).

"Courts have generally determined that the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination[.]"  Ostapowicz v. Johnson Bronze Co., 541 F.2d 394,

11

398-99 (3d Cir. 1976).  Here, however, the record does not show what the scope of the civil action should be because Orkin has not provided the EEOC or PHRC Charges of Discrimination with his Amended Complaint.  As a result, Orkin has not shown, and the Court cannot infer, that each of the claims included in his Amended Complaint are ripe.  The Court will **DISMISS** Counts II, III, IV, and V without prejudice and with leave to amend.[2]

**C.     Counts VI, VII, and VIII**

As a preliminary matter, Orkin concedes that the City is immune from liability for his tort claims.  The Court shall therefore **DISMISS** the City from Counts VI, VII, and VIII.

1.   Count VI: Intentional Infliction of Emotional Distress

Under Pennsylvania law, a plaintiff alleging intentional infliction of emotional distress must show "extreme and outrageous conduct [that] intentionally or recklessly causes severe emotional distress to another[.]"  Hoy v. Angelone, 720 A.2d 745, 753 (Pa. 1998).  Only conduct that is "extreme and clearly outrageous" establishes a claim; it must "be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  Id. at 753-54 (internal citation omitted).

Based on the allegations in the Amended Complaint, Orkin has not alleged facts showing the level of harm required to satisfy a claim of intentional infliction of emotional distress.  Orkin alleges that he developed mental health issues after learning that his son had been a victim of sexual assault.  Compl.  ¶¶ 27-29.  He confided in his superior, Defendant Harold Toomer, who promised to keep the issue confidential.  Id. at ¶¶ 28-31.  However, Toomer allegedly told

---

[2] The City also argues that Counts II, III, IV, and V should be dismissed because Orkin has failed to allege adverse action or a hostile work environment for his claim of mental health discrimination.  Mot. at 17-20.  Without ruling on the issue, the Court notes that the facts as pleaded in the Amended Complaint likely fall short of establishing adverse action of hostile work environment.  As requested in his Response, Orkin may correct or supplement his pleadings on this issue along with the others addressed in this Memorandum.

Defendant William Schubert, who then approached Orkin and discussed the issue.  Id. at ¶¶ 37-38. When confronted, Toomer acknowledged telling Schumer and also informed Orkin that other officers had seen Orkin seek assistance from the EAP and had made negative comments about Orkin's mental health.  Id. at ¶¶ 39-40, 49.  Orkin alleges that no disciplinary actions were taken against the officers making negative comments.  Id. at ¶ 42.  Additionally, Orkin alleges that an officer said to Orkin, "word is going around that you had a mental breakdown" and that officers who had previously interacted with Orkin began to avoid him.  Id. at ¶¶ 44-45.  Orkin claims that the Named Defendants' failure to keep Orkin's participation in treatment confidential resulted in emotional distress, tarnishing Orkin's reputation and causing him to feel "isolated and ridiculed" and humiliated.  Id. at ¶¶ 160-166.

Mere gossip, comments about a person's mental health, even references to a "mental breakdown," or feelings of isolation do not rise to the level of "outrageous" and "extreme" conduct required to satisfy the pleading requirement for a claim of intentional infliction of emotional distress.  Hoy, 720 A.2d at 754 (ruling that conduct rising to the level of intentional infliction of emotional distress is "extremely rare").  The Court shall therefore **DISMISS** Count VI against the Named Defendants without prejudice and with leave to amend.

2.  Count VII: Defamation

A plaintiff must allege facts sufficient to establish seven elements for a defamation claim:

(1) the defamatory character of the communication;
(2) its publication by the defendant;
(3) its application to the plaintiff;
(4) the understanding by the recipient of its defamatory meaning;
(5) the understanding by the recipient of it as intended to be applied to the plaintiff;
(6) special harm resulting to the plaintiff from its publication; and
(7) abuse of a conditionally privileged occasion."

42 Pa. Cons. Stat. § 8343(a).

The City argues that Orkin has failed to allege that the statements included in his personnel report were defamatory in nature.  Mot. at 28-29.  The City also argues that Orkin has failed to allege that he suffered from "special harm" as a result of the allegedly defamatory statement(s), particularly because he has only alleged that the statements "might" someday be viewed by future supervisors, not that they have been.  Id.  Orkin responds that an employee personnel file may be considered the basis for publication for his defamation claim and his false  light – invasion of privacy claim.  Resp. at 20.  However, he does not address the arguments raised by the City regarding the special harm or defamatory nature of the statements.

The Amended Complaint does not contain any allegations or details about the nature of the statements made in Orkin's personnel file.  It is therefore impossible to determine based on the allegations in the Amended Complaint whether the statements in question are defamatory.  It also does not allege specific monetary or out-of-pocket loss resulting from the alleged defamation as required to satisfy the "special harm" element.  Cornell Companies, Inc. v. Borough of New Morgan, 512 F. Supp. 2d 238, 271 (E.D. Pa. 2007).  The Court will therefore **DISMISS** Count VII without prejudice and with leave to amend.

3. Count VIII: False Light – Invasion of Privacy

 "A cause of action for invasion of privacy is comprised of four distinct torts: "(1) intrusion upon seclusion; (2) appropriation of name or likeness; (3) publicity given to private life; and (4) publicity placing a person in a false light." Byars v. School Dist. of Phila., 942 F. Supp. 2d 552, 566 (E.D.Pa.2013).  Pennsylvania law interprets the fourth tort as false light invasion of privacy:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

14

Id.  The disseminated information must be made by "communicating to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Byars, 942 F. Supp. 2d at 567.  This publication requirement is different from, and requires a broader audience than, publication required to establish a defamation claim.

The City argues that Orkin has failed to plead facts sufficient to establish that the information in question was disseminated to a wide enough group of people to satisfy the publication requirement.  Mot. at 27-28.  It notes that the Amended Complaint only alleges that Defendant Toomer told two people: Defendant Schubert and Defendant Bradshaw.  Id. at 27.  The City argues that the allegations about more generalized rumors and gossip found in the Amended Complaint were not pled with specificity.  Id. at 27-28.

Orkin responds that an employee personnel file may be considered the basis for publication.  Resp. at 20.  He points to two paragraphs in his Amended Complaint where he alleged that Defendant Bradshaw's notes about Orkin's decision to utilize the EAP was enough to state a claim of publication for the purposes of both his false light – invasion of privacy claim and his defamation claim.  Id., citing Am. Compl. ¶¶ 177, 179.

In his Amended Complaint, Orkin alleges:

Toomer, Schubert, Bradshaw, and [the Philadelphia Police Department] included notes regarding the Plaintiff's perceived disability in his work records, including confidential information from the EAP regarding the sexual assault to his son.

[. . .]

Bradshaw's notes are intended to warn future supervisors or superiors that Plaintiff is trouble and would not be a good candidate for a raise or promotion; due to a perceived disability or because he made the safety complaint.

Am. Compl. ¶¶ 177, 179.

Orkin also alleges that the Individual Defendants spread "information about Plaintiff's son being sexually assaulted" and "information about the Plaintiff's mental health to fellow officers

within the [police department]."  Id. at ¶¶ 186-87.  This is not merely conclusory, as he also alleges

that Defendant Toomer "told the Plaintiff that fellow officers had asked Toomer about the

Plaintiff's mental health and the fact that [Plaintiff] went to the EAP."  Id. at ¶ 190.  Finally, Orkin

alleges that the Individual Defendants "either explicitly participated in or allowed the public and/or

fellow officers to spread negative comments about the Plaintiff's mental health[.]"  Id. at ¶ 196.

At least some of those comments appear to have been false, particularly the rumor that Orkin had

suffered from a "mental breakdown."  Id. at ¶¶ 44-45.  Taken in a light most favorable to Orkin,

these allegations support the inference that the Named Defendants publicized sensitive and

potentially offensive information about Orkin's family and mental health to a population large

enough to be considered publication under the false light – invasion of privacy standard.  See

Harris by Harris v. Easton Pub. Co., 483 A.2d 1377, 1385 (Pa. Super. 1984) (communication to

seventeen individuals is large enough to constitute publicity under the false light standard).  The

Court will therefore **DENY** the Motion to Dismiss Count VIII as to the Named Defendants.

V.      **CONCLUSION**

        For the foregoing reasons, the Court will **GRANT** the motion to dismiss as unopposed for

the Philadelphia Police Department and the Philadelphia Police Department Employee Assistance

Program Unit and **DISMISS** those parties from the case, and the Court will **DISMISS** the City

from Counts VI, VII, and VIII as immune from tort liability.  The Court will also **GRANT** the

motion to dismiss as to Counts I, II, III, IV, V, VI and VII without prejudice and with leave to

amend within fourteen (14) days.[3]

        An appropriate Order follows.

---

[3] Although Orkin may be able to state a claim against all the Named Defendants, he should
consider, for case management purposes and because the City usually pays any judgment entered
against police officers, whether his case would be stronger and easier to litigate with fewer
defendants.